SMITH *et al.* v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

DIVISION ONE.

1. Railroad : PASSENGER : PERSONAL INJURIES. Where, in an action by a passenger against a railroad company for personal injuries, it appears that the plaintiff was told by the porter of the train to go forward two cars in order to get off at the next station, and that after plaintiff started to go forward the train started jerking her off the platform, such starting of the train constitutes negligence on the part of the company.

2. ———: ———: ———: EVIDENCE. The statement of plaintiff's son, made just after his mother had fallen off, that she jumped off, is inadmissible when the boy denies making the statement, and testifies he did not see his mother fall.

3. Common Carrier : PASSENGER : DEGREE OF CARE. An instruction that the law imposes on a common carrier of passengers the utmost care in carrying them safely is not erroneous, where an instruction is also given that the carrier is not an insurer of the safety of passengers, and that negligence on the part of its servants must be shown.

| | |
|---|---|
| 108 | 243 |
| 116 | 275 |
| 108 | 243 |
| 118 | 224 |
| 119 | 255 |
| 108 | 243 |
| 57a | 332 |
| 60a | 280 |
| 60a | 483 |
| 108 | 243 |
| 126 | 672 |
| 127 | 208 |
| 62a | 568 |
| 108 | 243 |
| 130 | 139 |
| 64a | 377 |
| 108 | 243 |
| 141 | 440 |
| 142 | 550 |
| 144 | 505 |
| 108 | 243 |
| 149 | 630 |
| 76a | 22 |
| 80a | 156 |
| 80a | 234 |
| 108 | 243 |
| f152 | 390 |
| 108 | 243 |
| 162 | 104 |
| 163 | 492 |
| 108 | 243 |
| 95a | 4100 |
| 95a | 3180 |
| 96a | 5594 |
| 108 | 243 |
| 177 | 4637 |
| 102a | 5529 |
| 102a | 3533 |
| 102a | 585 |
| 102a | 4587 |

4. ——— : ——— : ———. The care required of such carrier is that care, prudence and caution which a very careful person would use and exercise in a like business and under like circumstances, or the utmost care and skill which prudent men are accustomed to use under similar circumstances, or such skill, diligence and foresight as is exercised by a very cautious person under like circumstances.

5. **Personal Injuries :** MEDICAL SERVICES AS DAMAGES. Damages will not be allowed in an action for personal injuries for medical services in the absence of evidence as to their value.

*Appeal from Howard Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

REVERSED AND REMANDED.

*George Robertson* for appellant.

( 1 ) The verdict is against the evidence in the case, and this court will set aside a verdict when it is without evidence to support it. *Hacker v. Brown*, 81 Mo. 68; *Foster v. Foster*, 77 Mo. 227; *Schooling v. Railroad*, 75 Mo. 518; *Fairgrieve v. Moberly*, 29 Mo. App. 141. Or when the evidence so preponderates against it as to show that it was the result of partiality, prejudice or passion. *Oglesby v. Corby*, 96 Mo. 285; *Rosecrans v. Railroad*, 83 Mo. 678; Thompson on Trials, sec. 2273. ( 2 ) Plaintiff's instruction, numbered 3, is error, because it declares the starting of the train, in connection with other facts, to be negligent, and that the defendant is liable. Whether it was negligence to have started the train at the time was a question for the jury. *Doss v. Railroad*, 57 Mo. 37; *Dowell v. Guthrie*, 99 Mo. 653. The state of facts set forth in this instruction does not include all the facts necessary to constitute a case of liability of the defendant. It leaves out the fact of the injury as the result of defendant's agency. Instructions should be predicated upon the whole facts. *Sheedy v. Streeter*, 70 Mo. 679; *Dowell v. Guthrie*, 99 Mo. 653. ( 3 ) Instruction, numbered 4,

given at plaintiff's request is error. *First.* Because it is a mere abstract proposition of law. Abstract propositions of law must not be given. *Schroeder v. Mason,* 25 Mo. App. 190 ; *Fairgrieve v. Moberly,* 29 Mo. App. 141 ; *Haegele v. Stove Co.,* 29 Mo. App. 486 ; *Zwisler v. Storts,* 30 Mo. App. 164 ; *McDermott v. Dougan,* 44 Mo. 85. The reason being that such instructions may mislead the jury. *McDermott v. Dougan, supra. Second.* It is error because by the use of the word "utmost" the highest possible degree of care the human mind can attain to or is capable of inventing is required of the defendant, when the law is satisfied with the greatest degree of care practicable. Redfield on Car., sec. 347 ; 2 Rorer on Railroads, p. 955. ( 4 ) Instruction, numbered 6, of plaintiff is erroneous, for telling the jury in assessing damages to take into account plaintiff's expenditure of money when the evidence disclosed no expenditure at all. *Duke v. Railroad,* 99 Mo. 347. ( 5 ) Plaintiff's instruction, numbered 7, was erroneous in excluding from the jury the statement of the son that his mother had jumped off, except for the purpose of contradiction. He was with her and assisting her when she fell, and his exclamations that she jumped from the train are admissible as part of the *res gestæ. Waller v. Railroad,* 83 Mo. 608 ; *Brownell v. Railroad,* 47 Mo. 239 ; *Harriman v. Stowe,* 57 Mo. 93 ; 1 Greenleaf's Ev., sec. 108, *et seq.*

*P. S. Rader* and *Tyson S. Dines* for respondents.

( 1 ) The verdict is amply sustained by the evidence, and this court will not disturb the finding when such is the case. The court could not sustain a demurrer to plaintiff's cause predicated upon defendant's evidence. *Wood v. Ins. Co.,* 50 Mo. 112 ; *Smith v. Hutchinson,* 83 Mo. 691. The jury, and not the court, must psss upon any conflict in the testimony. *Brown v. Railroad,* 99 Mo. 310. ( 2 ) Plaintiff's instruction, numbered 3, is right. It simply says that a failure on the part of

defendant to perform its duties is negligence. The question as to whether plaintiff's injuries resulted proximately from his negligence is another question and covered by another instruction. Besides, this instruction is taken almost *verbatim* from the case of *Hickman v. Railroad*, 91 Mo. 435, where it is approved by this court. *Owens v. Railroad*, 95 Mo. 169, 180; *Goodwin v. Railroad*, 75 Mo. 73; *Mfg. Co. v. Ballow*, 71 Ill.; *Ravenscraft v. Railroad*, 27 Mo. App. 617, 623. (3) Instruction, numbered 4, given at plaintiff's request is right. The words complained of in this instruction are not nearly so strong as have been frequently quoted with approval by this court. This instruction imposes the duty "of exercising the utmost care." Taken in connection with instruction, numbered 2, given for defendant, the whole law is given. In the case of *Furnish v. Railroad*, 102 Mo. 456, the words are "utmost human skill and diligence," and this is approved. So often has the term utmost been used by this court to define the duty of common carrier of passengers, that the objection seems frivolous. *Higgins v. Railroad*, 36 Mo. 433; *Leslie v. Chancellor*, 68 Mo. 340; *Gibson v. Railroad*, 76 Mo. 282; *Waller v. Railroad*, 83 Mo. 608-616; Story on Bailments [7 Ed.] sec. 601; Angell on Carriers [4 Ed.] sec. 569; *Ingalls v. Bills*, 9 Met. 1; *Christie v. Griggs*, 2 Camp. 80; *Taylor v. Railroad*, 48 N. H. 304; *Stokes v. Saltonstall*, 13 Peters, 181.

BLACK, J.—The defendant prosecutes this appeal from a judgment in favor of the plaintiff rendered in a personal-damage suit. Plaintiff is a married woman of the age of forty-five years. She and her son, fifteen years of age, became passengers at Odessa for Higbee on the defendant's morning train. A hundred or more persons got on the train at the first-named place for an intermediate station, so that the local cars were crowded. Several witnesses testify that the conductor of the train

directed the plaintiff and her son to get in a rear coach, designed for through passengers, and it is an undisputed fact that they took a seat in the front end of the rear car. She had in her hands a long pasteboard shoe-box and a small hand-satchel, and the boy had in his care a hand-valise and a small paper box. The conductor told the porter of the car where she would get off, and the porter had a conversation with her before she reached Yates, which was the station next west of Higbee; but there is much conflict in the evidence as to what he said to her.

Her evidence is to the following effect: "The porter passed through the car and stopped at the door; he and the conductor had a conversation; he then came to me and said: 'The next time the train stops, that will be at Yates. You cannot reach the platform from this car; you go in the car two cars ahead of this, or you cannot get out.' The porter gave me that direction, and I supposed it was an order from the conductor." She says she and her son got up and started forward as soon as the train stopped at Yates; that her son went out on the platform first and one of the two doors closed; that she opened it as quick as she could; that she got out on the platform and just as she stepped on it the car started and she fell off head foremost. She says, "I suppose it was the jerk of the cars," and, again, "I was jerked off and rolled down in a ditch." The boy says the porter told them to go two coaches ahead when they got to Yates. There is much evidence to the effect that the train stopped at Yates but a few seconds, not long enough to enable persons to pass through two coaches, and that plaintiff and her son started forward as soon as the cars stopped.

The porter says it was his duty to assist ladies, children and infirm persons on and off the cars; that he told plaintiff the car she was in would not reach the platform at Higbee, and before they reached that place he would assist her in going forward two coaches, so that she could get off on the platform. There is other

evidence tending to show that the car began to move before she left her seat; that she was found one-fourth of a mile beyond the platform at Yates, and that she said she got dizzy while on the platform.

Before the accident she was a stout woman, and made a living for herself and son as a seamstress, earning about $20 per month. Though no bones were broken she received several wounds, and since that time has not had the full use of one leg and arm and still suffers much, and is able to perform but little work. The verdict was for $3,000.

I. If the defendant's servants directed the plaintiff to move to the third car forward of the one in which she was sitting as soon as the train stopped, and she undertook to obey the order, it devolved upon her to use ordinary care and diligence, considering her age, sex and surroundings. On the other hand it became the duty of the defendant to stop the train long enough to enable her to go to the car to which she had been directed, by the use of the care and diligence before mentioned; and a failure on the part of defendant to stop the cars for such a length of time was a breach of duty to her, entitling her to recover damages for the injuries occasioned thereby. These principles are all embraced in the plaintiff's first and third instructions, and there was no error in giving them. Indeed, they required the jury to find the further fact that the defendant's servant negligently put the train in motion while she was on the platform, and before she could get across by the use of ordinary care and expedition.

There is no merit whatever in the claim that the verdict is unsupported by the evidence. It is true there is a conflict in the evidence, and especially as to the instruction of the porter, but it was for the jury to settle this matter. The six instructions given at the request of the defendant present most favorably the entire defense.

II.   The fourth instruction given at the request of
the plaintiff told the jury, that the law imposed upon a
common carrier of passengers the utmost care in carry-
ing them safely to the place of destination, and that the
absence of the utmost care constituted such negligence
as to render the carrier liable for all injuries resulting
to the passengers, the passenger being free of contribu-
tory negligence.

By the second instruction given at the request of
the defendant the court told the jury that railroad com-
panies were not insurers of the safety of passengers, and
to entitle a passenger to recover it devolved upon her to
show that the injury complained of was occasioned by
the negligence of the company or its servants.

The defendant objects to the use of the words
"utmost care," but when the two instructions are taken
together there is no valid objection to the plaintiff's
instruction.   In *Dougherty v. Railroad*, 97 Mo. 447,
which was a suit against a street railroad, we disap-
proved an instruction which required of the company the
"exercise of the utmost human foresight, knowledge,
skill and care."   This language, in the connection in
which it was used in that case, conveyed the meaning
that the carrier must use that precaution which one
could use who knows beforehand that the accident will
otherwise occur.   The law does not require such fore-
sight on the part of the carrier.   2 Shear. & Red. on
Neg. [4 Ed.] sec. 496.   This court has on several occa-
sions approved the rule as given by Story, namely, that
"passenger carriers bind themselves to carry safely those
whom they take into their coaches, as far as human care
and foresight will go; that is, for the utmost care and
negligence of very cautious persons."   Story on Bail.
[9 Ed.] sec. 600.

The care required is that care, prudence and cau-
tion which a very careful and prudent person would use
and exercise in a like business and under like circum-
stances (*Gilson v. Railroad*, 76 Mo. 283); or such skill,

diligence and foresight as is exercised by a very cautious person under like circumstances ( *Furnish v. Railroad,* 102 Mo. 438 ); or the utmost care and skill which prudent men are accustomed to use under similar circumstances. Shear. & Red. on Neg. [ 4 Ed.] sec. 405. If parties would use the whole of some one of these or like definition or description of the duty of a carrier of passengers, instead of selecting but a few words, there would be less difficulty, and reversals prevented. Taking the two instructions together in this case, we see no error in them. The undisputed evidence shows that the train did not stop long enough to enable the plaintiff to go through two cars to the third, and the real issue of fact was as to the instructions given her by the porter.

III.   The next complaint is that the court erred in excluding evidence of the statement of the boy to the effect that his mother jumped off the train. It appears the train ran on some distance until the boy's lamentations attracted the attention of some of the passengers. It was then stopped and backed up to where she fell off. The conductor says the boy then asked her why she jumped off; and another person says he asked the boy how she got off, and he said she jumped off. His evidence is that he made no such statement. He says he got across the platform, and was stepping in the door of the second car when he missed his mother, and that he did not see her fall; that he then got down on the step and saw her on the ground "away back." He then commenced crying.

This evidence of what the boy said, it is urged, was part of the *res gestœ,* and, therefore, should not have been excluded. The boy was with his mother, it is true, and the statements were quite clearly connected with the fact at issue, and, hence, we have some of the elements of declarations constituting part of the *res gestœ.* *Leahey v. Railroad,* 97 Mo. 165, and cases cited. But he says in the most emphatic terms that he did not see his mother when she fell and did not miss her until he

had opened the second car door, and this evidence seems to stand undisputed. It is evident that if he made the statements at all they were mere conclusions drawn by the operation of his mind and not the spontaneous exclamations of the real cause, and we think they were properly excluded. *State v. Elkins*, 101 Mo. 344. These alleged statements were allowed to stand for the purpose of contradicting his evidence and for that purpose were not excluded.

IV. The instruction on the measure of damages declares that if the jury find for the plaintiff ·· they will, in assessing her damages, take into consideration her loss of time, expenditure of money, pain, suffering and mental anguish, as well as her future state of health and strength, resulting directly and immediately from the injuries sustained, not exceeding the sum of $10,000."

There is evidence that the plaintiff received the services of three or four physicians, and damages to the amount of $200 are claimed in the petition for debts contracted for medical services; but there is not a word of evidence as to the amount of the charges of these physicians, or any of them, nor is there any evidence as to any other expenses incurred. In the case of *Murray v. Railroad*, 101 Mo. 236, due proof of the amount of the surgeon's bill was made, and the only omission was as to the expenses of nursing, the time during which nursing was required being fixed by the evidence. We said it might be presumed that jurors were familiar with the value of such services, and, the verdict being deemed moderate in amount, we declined to reverse the judgment because of the omission. We cannot say the same of physicians' services. The case is more like that of *Duke v. Railroad*, 99 Mo. 347. If parties will overlook evidence of expenses incurred and yet include such expenses in the element of damages to be allowed, they must be prepared for a reversal of the judgment.

Because of this error the judgment is reversed, and the cause remanded for new trial. All concur.