FILLINGHAM, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 17, 1903.

1. **Pleadings**: PETITION: NECESSARY AVERMENTS. In an action for damages for injury to a passenger incurred in alighting from a car, a petition, which alleges that the car was run past the station, that the conductor called out the station, and describes the place where plaintiff was obliged to alight, showing that it was rough, inconvenient and necessitated an awkward descent from the car, sufficiently avers negligent acts on the part of defendant's employees, without using the words "unsafe" or "dangerous" to describe the place.

2. **Practice**: OPENING STATEMENT OF COUNSEL: ADMISSIONS. A mere preliminary outline by counsel, in his opening statement, of what he expects the evidence will be, is not an admission to take the place of proof.

3. **Negligence**: CARRIERS OF PASSENGERS: ASSUMPTION OF RISK. Assumption of risk rests on contract, but a carrier of passengers can not contract against the consequences of any negligence it may be guilty of, and where injuries result to a passenger from the carmen's inattention to duty, it is no defense to an action brought for such injuries to say that the plaintiff assumed the risk of injury in alighting from the car at a place designated by them.

4. **Carriers of Passengers**: CONTRACT BETWEEN CARRIER AND PASSENGER. The contract between a carrier and a passenger continues not only during the interval consumed in transporting the passenger from his starting point to destination, but during the period needed for safe exit from the vehicle, and includes the providing of a safe landing place for the passenger.

5. ———: DEGREE OF CARE. The law exacts of a carrier the utmost care, skill and diligence in caring for passengers, and he is responsible if an accident occurs because of the slightest negligence on his part.

6. **Instruction to Jury:** GENERAL TERMS. An instruction which expresses the law in general terms, and in a manner not likely to mislead the jury, does not constitute reversible error; though it might be held erroneous to refuse a request to qualify such an instruction by making it fuller and more definite.

7. ————: ————: In an action against a carrier for injury to a passenger, giving an instruction which told the jury that defendant was bound to exercise "the utmost care, skill and vigilance toward plaintiff, etc., without defining the terms used, was not error, since defendant did not ask a fuller and more definite one.

8. **Carrier of Passengers:** RUNNING PAST STATION: CONTRIBUTORY NEGLIGENCE. Where the car runs past the station at which the passenger desires to get off, and the conductor calls the station, and waits for the passenger to alight, this amounts to an invitation to the passenger to leave the car where it stands, and such passenger can not be charged with negligence in relying on the judgment of the conductor, unless the danger of alighting at the spot is so extreme and apparent as to deter a person of ordinary prudence.

Appeal from St. Louis City Circuit Court. —*Hon. Warwick Hough,* Judge.

Affirmed.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collett* for appellant.

(1) Defendant was entitled to judgment on the statement of facts made by plaintiff's counsel in opening his case to the jury. In such cases it is the duty of the court to stop further proceedings and enter up judgment for the defendant, without waiting for plaintiff to introduce proof in support of his counsel's confession that he had no cause of action. Oscanyan v. Arms Co., 103 U. S. 261; Butler v. National Home, 144 U. S. 65; Pratt v. Conway, 148 Mo. 291. (2) The circuit court erred in refusing defendant's instructions in the nature of a demurrer to plaintiff's evidence. Plaintiff's own testimony is such as to preclude her recovery. It appears from her petition that along the full length of the

car was a running-board for the use of passengers, and her own evidence shows that there was no obstacle in the way of her walking along this running-board to the rear end of the car, where she could have alighted in safety. Under such circumstances, the carrier is not liable. Young v. Railway, 93 Mo. App. 267; Railway v. Friel (Ky.), 39 S. W. 755; Lee v. Railway, 65 N. E. 822; Bridges v. Railroad, 6 Q. B. L. R. 377; Signer v. Railroad, L. R. 3 Exch. 150; Fish v. Ferry Co., 4 Pa. 103; Eckard v. Railway, 70 Iowa 353; Railway v. Peters, 80 Ind. 168. (3) Plaintiff's first instruction is bad, for a number of reasons. The chief and most glaring vice is that the court authorizes a verdict for plaintiff if the agents and servants of defendant managing the car "failed to exercise the utmost care, skill and vigilance," without defining in this or in any other instruction what is meant by "utmost care, skill and vigilance." As the instruction stands it calls for the utmost conceivable care, skill and vigilance, which is reversible error. Dougherty v. Railroad, 97 Mo. 647; Smith v. Railway, 108 Mo. 243; Jackson v. Railway, 118 Mo. 225; Freeman v. Railway, 95 Mo. App. 94.

*Judson & Green* for respondent.

(1) An attorney's opening statement to the jury, being merely an outline of the evidence which he expects to educe in the progress of the trial, and being made upon the spur of the moment, does not perform the office of a pleading. Butler v. National Home, 144 U. S. 65; Pratt v. Conway, 148 Mo. 291; Russ v. Railroad, 112 Mo. 45; 1 Thompson on Trials, sec. 267. (a) The opening statement of counsel for respondent herein contains no such solemn admission. (b) By subsequently offering evidence in its own behalf, appellant waived the error, if any there was, which the court committed in overruling its demurrer at the close of said opening statement. Leonard v. Railroad, 57 Mo. App.

366; Sauter v. Loveridge, 103 Mo. 615; Gale v. Foss, 47 Mo. 276. (2) The petition in this case is not open to the objections urged by appellant. It alleges specifically, and in apt and appropriate language, the negligence of appellant in failing to stop its car at a place suitable for respondent to get off and in failing to assist her in alighting therefrom. Weaver v. Harlan, 48 Mo. App. 319; Wright v. Radcliffe, 61 Mo. App. 257; Lingenfelder v. Ins. Co., 19 Mo. App. 252. A mere general allegation of negligence is sufficient upon objection to introduction of evidence made at the trial for the first time. Roberts v. Walker, 82 Mo. 200; Loyett v. Wolff, 45 Mo. App. 489; Young v. Iron Co., 103 Mo. 324. (3) Under all the evidence, the question of respondent's contributory negligence was undoubtedly for the jury. Fetter on Carriers of Pasengers, sec. 147; Talbott v. Railroad, 72 Mo. App. 291; Pool v. Railroad, 25 L. R. A. 744; Edwards v. Railroad, 94 Mo. App. 37; McLane v. Railroad, 32 S. W. 776; Brodie v. Railroad, 24 S. E. 180; Railroad v. Usry, 82 Ga. 54; Cartwright v. Railroad, 52 Mich. 606; Hutchinson on Carriers, sec. 615, p. 728; Jackson v. Railroad, 29 Mo. App. 495; Woller v. Railroad, 83 Mo. 608; Loyd v. Railroad, 53 Mo. 509; McDonald v. Railroad, 88 Iowa 305; Foy v. Railroad, 18 C. B. (U. S.) 225; Painter v. Railroad, 53 Kan. 414; Van Asher v. Railroad, 35 Hun 590; McKimble v. Railroad, 139 Mass. 542; Lang v. Railroad, 81 Tex. 253; Johnson v. Railroad, 11 Minn. 296; Hinshaw v. Railroad, 118 N. C. 1047. (4) The stopping of the car at this point, the calling of the station by the conductor, and his holding the car and waiting for respondent to get down, amounted to invitation to her to alight at this place, and in the absence of any notice or warning she had a right to assume that it was a safe and suitable place for that purpose. McGee v. Railroad, 92 Mo. 208; Robson v. Railroad, L. R. 2 Q. B. Div. 85-88; Leslie v. Railroad, 88 Mo. 50; Edwards v. Railroad, 94 Mo. App. 37; Railroad v. Smith, 92 Ala. 237; Railroad v. Burk,

96 Ind. 346. (5) Respondent's first instruction correctly declares the law. Lemon v. Chansler, 68 Mo. 340; Furnish v. Railroad, 102 Mo. 438; Clark v. Railroad, 127 Mo. 208; Sharp v. Railroad, 114 Mo. 101; Powers v. Railroad, 60 Mo. App. 481; Smith v. Railroad, 108 Mo. 249; Schaefer v. Railroad, 128 Mo. 64. The very language used in this instruction, or even stronger language, has frequently been approved by our appellate courts, when applied to a similar state of facts. Lesinsky v. Great West. Dispatch, 13 Mo. App. 576; Barclay v. Railroad, 148 Mo. 124; Otto v. Bent, 48 Mo. 33; Jackson v. Railroad, 118 Mo. 199.

GOODE, J.—1. The point is made in this case, which is one to recover damages for personal injuries, that the petition is fatally defective in failing to show any connection between the negligence charged against the defendant and the injuries to the plaintiff. To deal with that point a synopsis of the petition will be given. After charging that the defendant owns and operates an electric railway in the city of St. Louis and northwardly therefrom through St. Louis county to Creve Coeur lake, the petition states that the plaintiff was heretofore a passenger on one of the defendant's cars traveling over said county line; that the car was an open one with a footboard on either side for the use of passengers in entering and leaving it; that one of the regular stations on the line for receiving and discharging passengers was at Woodson road, a wagon road intersecting the railway three or four miles west of the city limits; that at said station defendant maintained an elevated wooden platform for the safety and convenience of passengers in entering and leaving its cars, which platform was located on the north side of its track and immediately west of Woodson road and was known as Woodson road station; that plaintiff notified the conductor of the car she was on of her desire to leave it

at Woodson road and that it was the duty of the carmen to stop opposite said wooden platform for her to alight; but that they carelessly ran the car beyond the platform, across Woodson road, and brought it to a stop some distance west of both the platform and the road at a place where the ground was three or four feet below the running-board of the car from which passengers had to step in alighting, and where the surface of the ground was rough; that when the car came to a stop at that place the conductor carelessly called the name of said station and waited for plaintiff to alight without having the car returned to the platform and without assisting or offering to assist her; that plaintiff thereupon attempted to step carefully from the railing of the car and in doing so, by reason of the great distance from the railing to the ground underneath, and on account of the uneven surface of the ground, fell and was severely injured.    In addition there is an averment as to the extent of her injuries.    The testimony for the plaintiff went to prove the truth of everything alleged.

The objection made to the sufficiency of the petition is that there was no averment that the place where the car stopped was dangerous for an alighting person.    It is true the adjective "unsafe" or "dangerous" is not used in the petition, but the description of the spot shows that it was an inconvenient place, necessitating an awkward descent from the footboard.    According to the petition, the surface of the ground was three or four feet from the footboard of the car, and was, moreover, rough and liable to cause her to fall.    It is charged, besides, that there was a platform where it was customary to let passengers off and that instead of stopping the car at the platform, the carmen ran past it, then stopped opposite low ground, the conductor called out her station and permitted her to get off without assistance or remonstrance.    The stated acts of the defendant's employees in charge of the car were negligent acts and they are pleaded as the cause of the injury to the

plaintiff; so the assignment against the sufficiency of the petition is overruled.

2.  Error is assigned because the circuit court refused to nonsuit the plaintiff on the opening statement made by her counsel.   That statement was not a solemn admission in court of facts material to the case, but was a mere recital of what facts counsel expected the evidence would disclose.   Such a statement to the jury is intended to help them grasp the bearing of the evidence on the issues and ought to be truthfully given.   But the law in this State does not authorize the nonsuit of a party on a statement of anticipated proof which, perchance, contains something that might, if established by evidence, result in a nonsuit.   Parties are bound by the admissions of their counsel during trial, of facts material to the issue to be tried, as such admissions dispense with the necessity of proving the doubtful fact. Pratt v. Conway, 148 Mo. 291.   But a mere preliminary outline by counsel of what he expects the evidence will be, is not a solemn admission to take the place of proof. Russ v. Railroad, 112 Mo. 45.   Aside from this legal proposition, the statement made by the counsel in this case, if it had the effect of a solemn admission in open court, would have afforded no ground for a nonsuit; for it substantially followed the petition and showed a prima facie case.

3.  Before taking up the other points involved in the appeal, we will dispose of the defense of assumption of risk, which is insisted on by the defendant; for we wish to emphasize the proposition that when a plaintiff, in an action for damages for an alleged negligent tort, is shown to have assumed the risk, this puts out of the case all questions relating to the degree of care the defendant was bound to observe, or whether he was negligent or the plaintiff guilty of contributory negligence. If the risk was assumed and the circumstances were such that it could be legally assumed, there is no liability for mere negligence.

That Mrs. Fillingham assumed the risk of injury in alighting from the car is asserted on an assumption that her own testimony shows she observed and estimated the length and difficulty of the step she had to take to reach the ground, before taking it; that therefore she appreciated the danger and voluntarily risked it.    In point of fact her testimony hardly bears out this contention, since she swore she had not time to examine the ground well and that the distance was more than she supposed.

But aside from the effect of her testimony, what, we ask, has the doctrine of assumption of risk to do with the case?    That doctrine generally pertains to controversies between masters and servants; although litigation, attended by circumstances which make the defense available, may arise between parties not sustaining that relation.    Warren v. Railway, 136 Mass. 484. Arise where it may, the defense is one which must rest on contract; or, if not exclusively on contract, then on an act done so spontaneously by the party against whom the defense is invoked that he was a volunteer, and any bad result of the act must be attributed to an exercise of his free volition, instead of to the conduct of his adversary.    Adolff v. Columbia Pretzel Co., 100 Mo. App. 199, 73 S. W. 321.    The word "assumption" imports a contract, or some kindred act of an unconstrained will. Whenever a man does anything dangerous he encounters the risk, but it by no means follows that, legally speaking, he assumes the risk.    That Mrs. Fillingham's agreement with the defendant for carriage contemplated and covered the risk of alighting at such a place as she did, will not bear argument; neither will the contention that because she made no demand to have the car returned to the platform she took to herself the risk incident to getting off at the point selected for her by the car operatives. She was justified in relying to some extent on their judgment and skill; and though she might do so in circumstances that would debar her from recovering

Fillingham v. St. Louis Transit Co.

damages, it would be on the score of contributory negligence, a defense to be examined below.

But in considering the relevancy of the doctrine of assumption of risk to the present case, we must remember, above all, that the law forbids a carrier to contract against the consequences of any negligence it may be guilty of in conveying passengers. Jones v. Railway, 125 Mo. 66; Ribby v. Railway, 82 Mo. 292. Hence, if the injury to the plaintiff occurred from the carmen's inattention to duty, defendant would be liable even if plaintiff had assumed the risk of injury in alighting by an express agreement. On the other hand, if the accident did not arise from the fault of the employees, but was either purely fortuitous, or caused or contributed to by plaintiff's own carelessness, the defendant, as suggested above, is exonerated from responsibility by legal rules entirely distinct from the doctrine of assumption of risk; namely, by the rule that a defendant is not answerable for an accident unless caused by his tort, or if the plaintiff's own negligence was an active cause. We fail, therefore, to discern how the doctrine of assumption of risk can be pertinent. As plaintiff was of full mental and physical competency, if the car had been stopped at an unsafe place in obedience to her command, in order that she might get off, and she had suffered an injury in getting off, possibly it could be argued that she assumed the risk by an implied contract or according to the maxim *volenti non fit injuria,* but on such facts it might be argued with equal cogency that the carmen were innocent of negligence. Neville v. Railway, 158 Mo. 293. But she gave no such order, and we think there was evidence on the averment that the place where the car stopped was unsafe and that the carmen were negligent in stopping it there.

4. The next point to be examined is as to whether the contract for carriage was in force while plaintiff was leaving the car, or had previously terminated. In other words, when does such a contract end? This is a

material question in determining the degree of care the defendant owed the plaintiff. It may be easily answered. The contract between a carrier and a passenger continues not only during the interval of time consumed in transporting the passenger from his starting point to destination, but during the period needed for a safe exit from the vehicle. Kelly v. Railway, 70 Mo. 604; Straus v. Railway, 75 Mo. 185; Hurt v. Railway, 94 Mo. 255; McKimble v. Railway, 139 Mass. 542; Pa. Ry. Co. v. McCaffrey, 173 Ill. 169; Hutchinson, Carriers (2 Ed.), sec. 612; Nellis, Street Railways, p. 749. The degree of care required of the carrier for a passenger's safety while he is leaving the vehicle, is as high as that required while he is in transit; that is to say, the extraordinary care imposed by the law on carriers of passengers, begins when the contract of carriage takes effect on the rights of the parties and continues unimpaired until that contract ends with deposit at destination; thus protecting passengers as they get on and off conveyances. Weber v. Railway, 100 Mo. 194; Grace v. Railway, 156 Mo. 295. Part of this duty to safeguard passengers while leaving a car or other vehicle consists in taking care to put them off at a reasonably safe place. Talbot v. Railway, 72 Mo. App. 291; Atkinson v. Railway, 92 Mo. App. 489; Young v. Railway, 93 Mo. App. 267; Bass v. Railway, 46 Atl. 1059; Stewart v. Railway, 80 N. W. (Minn.) 854; Johnson v. Railway, 11 Minn. 296; Bass v. Railway, 70 N. H. 107; Nellis, Street Railways, p. 484; Hutchinson, Carriers, sec. 615. This rule is to be distinguished from one holding a carrier only for lack of ordinary diligence in respect to platforms and approaches, in actions for injuries resulting before the relation of carrier and passenger began or after it ended. Cobb v. Railway, 149 Mo. loc. cit. 150; Kelley v. Railway, 112 N. Y. 443.

Common carriers are not, of course, insurers of the safety of those they convey, nor answerable for an accident to them no matter how produced; but only for those

accidents which can be traced to some neglect of duty. In every such case the question is one of negligence, which must appear either from testimony or the nature of the accident. Hence, if an injury happens to a passenger in getting off a vehicle at a difficult landing place, and is caused thereby, the carrier's responsibility depends on whether it was negligent in discharging the passenger at the place. Certain cases cited by the defendant appear to have been reversed on the ground that the trial court held the defendant railway companies were absolutely bound to provide a safe landing place instead of being bound to use the highest care to do so. Bigelow v. St. Ry. Co., 161 Mass. 393; Conway v. Ry. Co., 87 Maine 283. In the latter case the court said the company was no insurer of the safety of the landing place, but discharged its duty when it selected the place with the greatest care.

5. Having decided that the same degree of care that must be taken of a passenger while in transit must be taken also while he is disembarking, the question arises what that degree of care is; or rather in what words a jury ought to be instructed concerning it. No one will dispute the proposition that it is the highest care—the utmost that very prudent men employ in performing the contract of carriage with like means of transportation. The point of controversy as to the care required is raised on a charge given to the jury in substance as follows: that the defendant was bound to exercise toward plaintiff "the utmost care, skill and vigilance" to carry her safely, and also on her arrival at destination to stop the car at the usual stopping place, or some other place where it was suitable for plaintiff to alight; and if defendant's servants in charge of the car failed to exercise the utmost care, skill and vigilance, and by reason thereof did not stop at the usual place, but beyond it at a place unsafe and unsuitable for alighting and plaintiff was consequently injured while alight-

ing and while she herself was exercising ordinary care, defendant was liable.

It is insisted the phrase "utmost care, skill and vigilance," overstated the care defendant was bound to observe and called for the highest conceivable care. Further; that the instruction tended to mislead the jury, as it gave them no definite advice as to what was meant by the utmost care, but left them to conjecture what it meant. Defendant contends the court should have defined the expression, "utmost care and skill," as the care and skill which very cautious men exhibit in similar circumstances.

For ages the law has been that though the carrier does not warrant the safety of passengers, he is bound to provide for it so far as skill and assiduity can do so, and is responsible if an accident occurs because of the slightest negligence on his part. Hutchinson, Carriers (2 Ed.), secs. 500, 501, 553; Thompson, Carriers of Passengers, p. 200; 2 Kent's Commentaries (14 Ed.),*p. 602; Story, Bailments, sec. 600; Shearman & Redfield, Negligence (5 Ed.), 495; Christie v. Grigg, 2 Camp. 79; Stokes v. Saltonstall, 13 Peters 181; Pa. Ry. Co. v. Roy 102 U. S. 451; Sawyer v. Ry., 37 Mo. 240; Huelsenkamp v. Ry., 37 Mo. 537; Lemon v. Chanslor, 102 Mo. 438; Sharp v. Railway, 114 Mo. 101; Schaefer v. Railway, 128 Mo. 640; Powers v. Railway, 60 Mo. App. 481. An objection has often been raised to instructing juries by the words used in the present case, and it is not the best or the most approved form of charge. It is well to advise a jury, if requested, or even without request, that the law means by utmost care and skill the degree of those qualities used by very cautious men in the same vocation. But this is a different proposition from saying that it is reversible error to give an instruction like the one before us; and we have neither been cited to nor found a precedent holding that it is. It might well be held erroneous to refuse a request to qualify a charge like the one in question; but be held no error to give it without

qualification, if the defendant made no request that it be qualified. An instruction which expresses the law truly but in general terms, and in a manner not likely to mislead the jury, does not constitute reversible error; since the party dissatisfied with the instruction may ask one fuller and more definite. State v. Donnelly, 9 Mo. App. 519; Brown v. Railway, 13 Mo. App. 463; Browning v. Railway, 124 Mo. 55; Koehler v. Wilson, 40 Iowa 183. And generally speaking, a court is not bound to define such expressions as we are dealing with unless asked to do so. Johnson v. Ry., 96 Mo. 340. If the instruction in hand stated the law, it could not have misled the jury by being too abstract; for it stated also the specific facts to be found to justify a verdict for the plaintiff.

In Leslie v. Railroad, 88 Mo. 50, it was said an instruction for the plaintiff asserting the proposition that the defendant was bound to exercise the highest degree of care to carry the plaintiff from the place where he entered the train to his destination and deposit him safely there, stated the general rule correctly, and that as another instruction hypothecated the facts necessary to a recovery, the law was well declared. That case was much like the one in hand.

In Bowen v. Railroad, 18 N. Y. 408, it was said that the expression "as far as human care and foresight will go," had become familiar in stating the rule of duty.

Some of the later decisions in this State condemn the word "foresight" in instructions, as conveying the meaning that a carrier is bound to act as if it possessed foreknowledge that an accident would happen unless certain precautions were taken. Smith v. Railroad, 108 Mo. 243; Dougherty v. Railroad, 97 Mo. 347; Freeman v. Railroad, 95 Mo. App. 94. And it was held erroneous to charge that a plaintiff who was injured by a car door falling, should recover if the door could have been kept from falling had the defendant used "the greatest possible care and diligence that were necessary." Gilson

v. Railroad, 76 Mo. 282. What was condemned in that instruction was the word "necessary," which was conceived to require the precaution needed to prevent the accident, whether the highest care would have provided that particular precaution in advance or not.

The most that can be deduced from the decisions in this State is that it is erroneous to instruct the jury in a way which may impart the notion that a carrier of passengers is bound to know as well before as after an accident what precautions were required to prevent it. But we are aware of no decision which holds that it is erroneous to instruct that such a carrier is bound to use the utmost care, skill and diligence in caring for passengers, without enlarging on the meaning of the charge, if the defendant asks no more specific direction. All commentators on the law of negligence agree that the law exacts of the carrier the utmost care, skill, diligence and even foresight; and concur in stating the rule in those words, which have often been employed by eminent judges in charging juries.

The word "foresight" is irrelevant to the present discussion, for the trial court did not embody it in the instruction given, nor any other expression which has been condemned. The instruction correctly enunciates the law. While carriers are not absolute insurers of the safety of passengers, they are, for all practical purposes insurers against the results of the negligence of their employees, since they are liable for slight negligence. That the jury might have adopted the notion that the defendant's servants were under an obligation to use superhuman care, or care beyond that of the most cautious men, unless further admonished than they were in the present case, is altogether improbable, considering that they were told the specific acts they must find the defendant's servants did, or omitted to do, in order to find said servants fell short of performing the whole duty they owed to the plaintiff. No evidence was introduced to show cautious railway men would let a per-

·son off at a spot like the one on which the plaintiff alighted; nor was any comparison drawn between the ·conduct of such men and that of the crew in question. And in truth, the defendant does not contend the spot was safe or suitable, ·but that. the plaintiff knew its ·danger as well as any one.

In Huelsenkamp v. Railroad, supra, it is said that public policy and safety require a railroad company to be held to the greatest possible care and diligence.

In Lemon v. Chanslor, 68 Mo. 340, an action for ·damages for injuries sustained by the unsoundness of defendant's hack, the trial court charged that the burden was on the defendant to prove the breakdown of the hack was caused by inevitable accident and not from any defect of the hack or careless driving, and "that by the exercise of the utmost human foresight, knowledge, skill and care such injuries could not have been prevented by defendant." That instruction was approved.

In Smith v. Railroad, 108 Mo. 243, an instruction was given at plaintiff's instance, declaring that the law imposed on a common carrier of passengers the utmost care in carrying them safely to the place of destination and that the absence of· such care was negligence and rendered the company liable if the passenger was free from contributory negligence. Another instruction, given at defendant's instance, told the jury the railroad company was not an insurer of the safety of passengers and that to entitle a passenger to recover it devolved on him to show his injury was occasioned by the negligence of the company. The use of the phrase "utmost care" was considered at some length, with the result that the Supreme Court held the jury were properly instructed.

In Sharp v. Cable R'y Co., 114 Mo. 94, the instruction complained of told the jury the defendant was bound to use the utmost practicable care and diligence with reference to its cars, including brakes and grip-

irons.    The instruction was approved by the Supreme Court.

In Clark v. Ry. Co., 127 Mo. 197, it is said to be the duty of a carrier of passengers to convey them safely as far as it is capable of doing so by human care and foresight, and that it is responsible for all injuries resulting to passengers from any, even the slightest, neglect.    The correlative of slightest neglect is utmost care.

In Powers v. Railway, 60 Mo. App. 481, an instruction was approved which told the jury it was the railway company's duty to exercise the highest practicable care, caution and diligence to safely transport the plaintiff.

Attention to the authorities has satisfied us that we are not warranted to reverse this judgment on the ground of an improper direction concerning the care the defendant was bound to take of plaintiff; though we prefer a charge referring to a definite standard of care when the facts in proof make it proper to give such a charge. If defendant thought its cause would be helped, or the jury enlightened, by defining , or trying to define, the meaning of "utmost care and skill," it should have presented an appropriate instruction to the court.

6.    There can be no doubt that the facts of this case tended to show negligence on the part of the carmen in stopping where they did.    The place was unsuitable for alighting; and, moreover, was past the usual stopping point, whether that be, as contended by the defendant, the center of Woodson road itself, or the platform.    This being true, the only remaining point to be considered is the alleged contributory negligence of the plaintiff; and in the consideration of that defense we must apply to her conduct the test of ordinary care, while the company's is to be tested by a higher standard.

The defendant insists the plaintiff showed she was guilty of contributory negligence in stepping down at a spot which she knew was dangerous instead of going to the rear of the car, which is said to have been oppo-

site a level piece of ground. The evidence is conflicting as to whether that end of the car stood at a level part of Woodson road; and this point of her negligence in not getting off the rear of the car was, at best, one to be taken into account by the jury in making up their minds on the issue of plaintiff's exercise of care. What is certain is, that passengers were permitted to alight from any portion of the footboard, and that plaintiff was permitted to do so without remonstrance. Indeed, there was no testimony tending to prove passengers were accustomed or expected to walk along the footboard to a suitable landing place, or that they could do so comfortably and without risk of falling.

It has already been shown that plaintiff did not fully realize the length of the step she had to take, or know precisely what sort of ground she would step on. While she said the distance was three or four feet, other witnesses said it was only about twenty-two inches. To hold that she was negligent as a matter of law in getting off there, would be to lose sight of the high care the carmen were bound to take of her. She really got off where she did at their invitation. The car was so constructed that passengers could alight from it at either side by stepping on the running-board and from it to the ground; and it was expected that they would alight in that manner. Stopping, calling out the station and watching as she moved to leave the car, all of which acts the conductor did, certainly amounted to an invitation to her to leave it where it stood. Talbot v. Railroad; Leslie v. Railroad, supra; McGee v. Railroad, 92 Mo. 208; Railroad v. Painter, 53 Kas. 414; McDermot v. Railroad, 82 Wis. 246; Pa. Ry. Co. v. White, 88 Pa. St. 327; Roberson v. Railroad, L. R. 2 Q. B. Div. 85; Poole v. Ry. Co., 100 Mich. 379; Bass v. Ry. Co., 70 N. H. 170. She is not to be charged with negligence in relying on the judgment of the carmen and acting on their invitation, unless the danger of alighting at the spot was so extreme and apparent as to deter a person of ordinary

prudence.  Hinshaw v. Ry. Co., 118 N. C. 1047, and other cases above cited.  That the evidence proved beyond dispute the danger was of that sort and, therefore, called for a nonsuit by the court on the ground that the plaintiff certainly contributed to the accident by her own lack of care, is an untenable position, as clearly appears from the stated facts.

The rulings on the instructions were in accordance with the views above expressed, and as we have found none of the assignments of error to be meritorious, we affirm the judgment.  *Bland, P. J.,* and *Reyburn, J.,* concur.