GROVER MUNRO, by next friend, Respondent, v. St. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 21, 1911.

1. PLEADING: Motion to Elect: Cannot Perform Office of Demurrer. A petition cannot be attacked by a motion to elect as between the counts, on the ground that neither count, of itself, states facts sufficient to constitute a cause of action, as that would be making such motion perform the office of a demurrer.

2. NEGLIGENCE: Pleading: "Contributing to Cause." A petition in three counts, charging one injury as resulting from three negligent acts, each count alleging that the act therein pleaded "directly contributed" to the injury, was not defective in not alleging that the negligence pleaded in each count was the proximate cause of the injury, nor would it justify an implication that plaintiff was guilty of contributory negligence; it being apparent from the entire petition that the pleader intended to charge that the three negligent acts (which might have been joined in the same count) contributed with each other in producing plaintiff's injury.

3. RAILROADS: Injury at Station Platform: Pleading: Stating Several Assignments of Negligence in Same Count. In an action against a railroad company for injuries received by stepping into a hole in a station platform, there being but one *injuria* for which reparation was asked, an assignment of negligence that the platform was maintained in a dangerous and unsafe condition, an assignment that the platform was not sufficiently lighted, and an assignment that it was located at too great a distance from the track could properly have been joined in the same count of the petition.

4. NEGLIGENCE: Pleading: Several Acts of Negligence. The petition may allege several distinct acts of negligence, if they are not inconsistent with each other.

5. PLEADING: Petition: Separate Counts: Several Counts Considered as One. Where the petition contains separate counts, which declare upon separate and distinct causes of action, each count must be complete in itself; but where there is only one cause of action set forth in the petition, which might properly be pleaded in one count, but has been mistakenly set forth in separate counts, after judgment, the entire pleading will be construed in aid of the verdict, as setting up a single cause of action, irrespective of the intended division.

6. **RAILROADS: Injury at Station Platform: Sufficiency of Evidence.** Evidence, in a railroad passenger's action for personal injuries by stumbling because of the decayed condition of a station platform and falling under the train, *held* to make it a jury question whether defendant was negligent as to the condition of the platform.

7. ————: **Carriers of Passengers: Injury at Station Platform: Necessity of Showing Knowledge of Defects: Instructions.** Where a passenger has alighted from a railroad train at a station platform and the relation of carrier and passenger has ended, the railroad company is held only for lack of ordinary care in respect of its platforms and approaches, and if a defect in a platform was not directly caused by it or its servants, it must be shown that it or its servants knew, or by the exercise of ordinary care could have known, of the defect, in time to have had reasonable opportunity to repair it, and failed to do so, to make the company liable for injuries to such a person arising therefrom; and hence, in an action for injuries to a passenger who had alighted from a train, resulting from defects in the station platform, an instruction submitting the question of liability, which failed to require the jury to find that defendant knew, or by the exercise of ordinary care could have known, of the defect a sufficient time to have enabled defendant to repair it, was erroneous.

8. **NEGLIGENCE: Existence of Defect for Long Time: Law Does not Presume Knowledge.** The mere existence of a defect for a long time, without regard to its obviousness or location, does not raise a presumption of law that the defendant had knowledge of it, but the question whether he failed to exercise ordinary care is a question for the jury, unless only one view could be entertained concerning it.

9. **RAILROADS: Defect in Station Platform: Negligence.** While a failure for a very short time to discover and repair a yawning chasm in the floor of a crowded railroad depot would be gross negligence, it may be seriously doubted whether a failure to discover and repair a very slight decayed spot in a comparatively new platform of a flag station, used mostly for freight, is negligence at all.

10. **NEGLIGENCE: Ordinary Care.** What constitutes ordinary care depends upon the circumstances of each particular case.

11. **EVIDENCE: Witnesses: Credibility for Jury: Undisputed Evidence.** When a party having the burden of proof offers testimony, the other party is entitled to have the jury determine its credibility, even if he offers no contradicting testimony, though he may concede a fact by his pleadings, or by offering testimony to prove it, or by his conduct.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *E. T. Miller* for appellant.

(1) Defendant's motion to require plaintiff to elect should have been sustained. (2) Defendant's objection to the introduction of any testimony under the first count of the petition should have been sustained. The first count of the petition does not state a cause of action. But one act of negligence is pleaded therein, which is not alleged to have been the proximate cause of plaintiff's injury, but is merely alleged to have directly contributed thereto. Smith v. Hardesty, 31 Mo. 411; Deschner v. Railroad, 200 Mo. 310; Hof v. Transit Co., 213 Mo. 445; Krehmeyer v. Transit Co., 220 Mo. 639; Wilson v. United Railways, 121 S. W. 1083; Schmidt v. Transit Co., 120 S. W. 96; Hough v. Car Co., 123 S. W. 83; Beach, Cont. Neg., sec. 7. (3) There is no evidence of the negligence charged in the first count of the petition upon which the verdict rests. The fact that one of the boards in the platform had partially decayed did not, under the conditions present, constitute negligence. Joyce v. Railroad, 219 Mo. 373; Kelley v. Railroad, 112 N. Y. 443; 4 Elliott on Railroads, sec. 1590. (4) The court erred in giving plaintiff's instruction No. 1: (a) Said instruction is erroneous in that it permits the jury to establish its own standard of negligence. Lesser v. Railroad, 85 Mo. App. 326; Sommers v. Transit Co., 108 Mo. App. 319; Duerst v. Railroad, 163 Mo. 607; Allen v. Transit Co., 183 Mo. 411. (b) Said instruction is erroneous in failing to require the jury to find that defendant knew, or by the exercise of ordinary care would have known, of the alleged defective condition of said platform, a sufficient time to afford it a reasonable opportunity to repair it.

Richardson v. Marceline, 73 Mo. App. 360; Gerber v. Kansas City, 105 Mo. App. 191; Ball v. Neosho, 109 Mo. App. 692; Baustian v. Young, 152 Mo. 317.

*D. D. Holmes* and *S. E. Eaken* for respondent.

(1) It is permissible to state the same cause of action in different ways in different counts, for the purpose of so varying the form of the statement as to meet any possible state of proof. Pattison's Mo. Code Pleading, p. 138, par. 236; Brinkman v. Hunter, 73 Mo. 172; Burbridge v. Railroad, 36 Mo. App. 669; Renard v. Railroad, 164 Mo. 270; Landers v. Railroad, 134 Mo. App. 80. (2) If the act of negligence charged against defendant contributed with other acts of negligence of defendant, or with the negligent acts of another, other than plaintiff, or with some independent outside cause, then defendant would be liable. Krehmeyer v. Transit Co., 220 Mo. 639; Wilson v. United Railways Co., 121 S. W. 1083; Schmidt v. Transit Co., 120 S. W. 96. (3) As to the complaint about the petition, the objection comes too late. The petition charges that defendant maintained the platform in a dangerous and unsafe condition, which resulted in plaintiff's injury. From that it is inferable that defendant knew of its condition and had opportunity to repair it, and the petition is good after verdict. Hurst v. City of Ash Grove, 96 Mo. 168; Doherty v. Kansas City, 105 Mo. App. 173; Bowie v. Kansas City, 51 Mo. 454. (4) As to the complaint about the instruction, the rule is that as to facts presumed as a matter of law, or which are established by uncontroverted evidence, that it is not necessary to submit such facts to the jury. Hitt v. Kansas City, 110 Mo. App. 713; Dougherty v. Kansas City, 105 Mo. App. 176; Fullerton v. Fordyce, 144 Mo. 519; Sappington v. Railroad, 95 Mo. App. 387; Zellers v. Light Co., 92 Mo. App. 107; Herriman v. Railroad, 27 Mo. App. 435.

STATEMENT.—Suit to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had judgment for $7500 and defendant has appealed. The amended petition upon which the case was tried was in three counts. The first count, after alleging plaintiff's minority, the appointment of his next friend, the incorporation of the defendant, its character as a common carrier, operating, controlling and maintaining a railroad, alleges "that on or about the 23d day of July, 1908, he got on a regular passenger train which was under the control of, and being operated by, the defendant (on its said railroad) and paid the regular passenger fare on said train from Festus to Selma, Missouri, (two regular stopping places for passengers on said railroad); that the train on which plaintiff was a passenger stopped at said Selma for the purpose of allowing passengers to alight therefrom;" "that at said time the defendant maintained a platform at Selma for the purpose of taking on and discharging passengers; that it was the duty of the defendant to furnish the plaintiff with a reasonably safe place at which to alight and depart from said train, but that the defendant, wholly disregarding its said duty, negligently maintained said platform in a dangerous and unsafe condition, in this, to-wit: that at said time the defendant had allowed the planks of said platform to become rotten and decayed and that by reason of the said rotten and decayed condition of said planks they had become worn and broken, thereby causing the surface of said platform to become rough and uneven and also causing a hole in said platform;" that when said train stopped at Selma, as aforesaid, "plaintiff alighted from said train and started to walk along the said platform; that while plaintiff was walking along the said platform and while he was exercising ordinary care for his own safety, the aforesaid rough and uneven condition of the surface of said platform and the hole therein caused

plaintiff to stumble on said platform and to fall from the said platform and under the moving train of the defendant, thereby causing plaintiff's leg to be so bruised and mangled by the wheels of the defendant's said train that it afterwards became necessary to amputate said leg between the knee and ankle. Plaintiff further states that defendant's allowing the planks of said platform to become rotten and decayed, worn and broken thereby causing the surface of said platform to become rough and uneven and causing a hole therein, was negligence, and that *such negligence directly contributed to cause plaintiff's said injury."* The remaining allegations bear on the amount of damages plaintiff is entitled to recover and are laid at fifteen thousand dollars, for which sum plaintiff prays judgment.

The second count was like the first, except that it contained the additional allegation that "it was the duty of defendant to sufficienty light said platform .. . . that defendant had negligently failed to sufficiently light said platform, thereby preventing plaintiff (it being in the night time and very dark) from discovering the aforesaid condition of the planks in said platform before he had been caused to stumble thereby; that defendant's failure to sufficiently light said platform so as to enable plaintiff to see the condition of said platform was negligence *and that such negligence directly contributed to cause plaintiff's said injury."*

The third count was like the first, except that it alleged "that defendant negligently maintained said platform at too great a distance from the track, thereby leaving so great a space between the said platform and the train that a person stumbling on said platform was liable to fall beneath the said train . . . that because of the surface of said platform being in a rough and uneven condition he was caused to stumble on said platform, and because of the said platform being negligently placed as aforesaid at too great a distance from

said track, the plaintiff was thereby allowed to fall from the said platform and under the moving train of the defendant," etc.; "that defendant's maintaining said platform too great a distance from said track, thereby leaving so great a space between the said platform and the said train that a person stumbling on said platform was liable to fall beneath the said train was negligence, *and that such negligence directly contributed to cause plaintiff's said injury.*"

The answer consisted of a general denial of the allegations contained in each of the counts. At the outset, defendant's counsel objected to any testimony under the first and third counts because it is alleged that the negligence therein specified only directly *contributed* to the injury. The objection was overruled and the defendant duly excepted.

Plaintiff is a boy, sixteen years old. The evidence on his behalf tended to prove that on July 23, 1908, he traveled as a passenger for hire on one of defendant's regular passenger trains from Festus, Mo. to Selma, Mo. Selma is not a regular passenger station in the ordinary sense of the word, nor is it a town, but W. K. Kavanaugh has a dairy farm there, upon which defendant had built for him a platform 100 feet long and 8 feet wide for loading and unloading milk, and taking on and discharging passengers, most of whom are employees of Mr. Kavanaugh. There are about twenty-five people at Selma. Six passenger trains stopped there, but they would not stop to take on passengers unless flagged for that purpose. There is a private warehouse there, but no station building. Plaintiff, Alice Sauerhage, Sam Henderson, George O'Neill, Fred Warren and others worked for Mr. Kavanaugh. They had been to Festus to spend the day. Returning to Selma, plaintiff and Henderson, and Miss Sauerhage, rode in the ladies' coach, while O'Neill and Warren rode on the back platform without paying fare. The train approached the platform at Selma from the north

about nine o'clock at night and stopped with the ladies' coach some distance north of the platform. Plaintiff, Miss Sauerhage, Sam Henderson and others got off the south end of the ladies' coach and alighted safely upon the ground, twenty feet north of the platform. O'Neill and Warren also jumped off on the other side, ran around the hind end of the train and joined them. The north end of the platform is made high to load the milk from. It is higher than the remainder of the platform. There was a road around the east side. All of the others went around by this roadway and got up on the platform on the east side, but the plaintiff handed a bundle he was carrying to Henderson, and, going between the train and the platform, passed the high part and climbed up on the platform, fifteen or twenty feet from the north end. According to his testimony, O'Neill and Miss Sauerhage joined him there, having climbed upon the platform from the roadway on the east side. It was dark on the platform. The three then started to walk south along on the platform, plaintiff on the side nearest the train and two feet from the edge. They were going south to a road which crosses the railroad at the south end of the platform and leads to the Kavanaugh house. As the trio walked south, plaintiff testified that he was walking close to Miss Sauerhage and that O'Neill was about three feet *in front* of him, and "walking along with his hands *down by his side.*" He testified that as he, the plaintiff, was walking along, he caught his left foot in a hole, threw his right foot forward to catch himself, missed the edge of the platform, fell down under the then moving train and had his foot cut off at the ankle. The train went on without stopping. Plaintiff testified on cross-examination that he went to Festus about once a week and every time he went he used the platform at Selma. That he had been over the platform a few times in the daytime before he was hurt but did not know its exact condition. On cross-examination plaintiff identified his signature to a

written statement dated July 25, 1908, which contained the following: "Just as the train started ahead pulling away from the station, Alice Sauerhage, George O'Neill and myself started to walk south on the depot platform. I was next to the train, I still had hold of the girl's arm and George O'Neill was walking close *behind* and almost between us. And when the front end of one of the coaches got almost to us George O'Neill caught this front end of the coach just behind me and as George O'Neill passed me while he was riding on the steps of the coach he bumped against me while I was walking south on the west edge of the station platform near the train. George O'Neill bumped me on the right side of my back and when he bumped me it knocked me forward toward the train and against the side of the moving coach and I fell between the train and the station platform and the trucks passed over my right leg and foot." "It was not the condition of the station platform nor anything that was on the station platform that caused me to fall and get hurt. But George O'Neill catching the coach behind me and bumping up against me is what caused me to fall and get hurt." But he denied remembering having signed it, saying that when he signed it he was still under the influence of chloroform. He testified that he and the boys had been in the habit of jumping trains at that platform and riding down to the road which led to the Kavanaugh house, but denied that he had intended doing it on this occasion, and denied that for that purpose he had freed himself of his bundle by giving it to Sam Henderson. George O'Neill testified on behalf of plaintiff that when plaintiff fell, he, O'Neill, was just a little in *front* of him, having walked a little faster. That he did not see him when he first fell, but saw him in the act of falling; saw him throw out his hands and "kind of stumble like down between the train and the platform." He testified that where the plaintiff fell the plank was rotten; that "there was a

hole about two feet from the edge of the platform and it was not clear through the boards, quite a hole, big enough to stub your foot or toe in it, the other plank stood up about three inches;" that he had first "noticed the hole for four or five days beforehand." Upon cross-examination, after disclosing that he and Fred Warren had ridden over from Festus without meeting the fare collector and admitting a habit of train hopping, but denying that he had any such intention on this occasion, he admitted that in a sworn statement out of court, made the day after plaintiff was hurt, he had stated in effect that from a point ten feet south (in front) of where the plaintiff had fallen, back to the high part of the north end, the platform was in good condition. He said, however, that he had never read the statement; that he had not made accurate measurements but had merely stepped off the distances and was nervous and excited when he made the statement. Admitted that in his statement he said nothing about a hole. The questions and answers on his further cross-examination have a tendency to indicate that just before plaintiff fell and while this witness was *behind* plaintiff, this witness had his hands out in the position he usually assumed when catching on to moving trains. Sam Henderson testified on behalf of plainttiff that he had gone around by the road on the east side of the platform and was not going to get on the platform; that as he and plaintiff had gotten off the train, plaintiff had handed him a package and said, "Take this package, I am going to get a ride," and after that he paid no attention to plaintiff until plaintiff's falling in the dim light caught his eye. Says he don't know how he fell or just what caused it, but the appearance was he stumbled. Did not see any one knock him. Says that he had not particularly noticed the condition of the platform at any time prior to the time plaintiff was hurt, but "saw there was some small, bad places," and that "one place was where he fell." He said that he thought there was an opening

in the plank caused by decay; "a hole right through the plank, it was about seven feet north of where he fell." Being asked by the plaintiff's counsel, how long before the accident he had noticed the condition of the plank, he answered, "I noticed it off and on always as we came through; I never paid any special attention to it." On cross-examination, defendant elicted from him the statement that the hole he was talking about was about seven feet northeast from where plaintiff "stumbled and fell." He then admitted that on July 28, 1908, he had made a statement in writing in which the following occurs: "The place where Grover Munro fell between the train and the platform was fifty-one feet from the south end of the platform. There is a rotten place on the edge of a plank that leaves a hole in the west edge of the platform thirty-four feet from the south end of the platform, but the platform, the depot platform, is smooth and good from ten feet south of where Grover Munro fell back to the high part of the north end." This witness thought the hole was about an inch and a half wide and six or seven inches long. It was where the two edges of the plank came together. He stated that he did not see O'Neill that night until just after the accident. That he could see plaintiff and Miss Sauerhage walking on the platform, and said he should think that if O'Neill had been walking right between them he would have seen him just as easily. Does not remember seeing O'Neill. Frank Wierschem, an employee at Kavanaugh's, testified on behalf of plaintiff that he did not see plaintiff hurt but saw the blood stain on the rail. He stated that where plaintiff was hurt there were several decayed places in the platform. An objection by counsel for defendant that the question should be limited to some point on the platform was overruled. The witness then stated that "there was a decayed place some distance north of where the blood stain was," about six or seven feet north. He said that it was a small decay where the boards join, six or seven

inches long and several inches wide. He did not "think half of the board was there; the rest was worn out and decayed." The boards were about two inches thick and the board stood up beside the decayed one probably a little more than an inch or so. Being asked how long before this accident he had seen the condition of the board, he answered, "I noticed it in fact all the time; I hauled milk over the platform every day." J. W. Knight, testifying for the plaintiff, said that he knew the point where plaintiff was hurt by seeing the blood on the rail that night. He said, "there was a portion of one plank that butted up against another that had become decayed and part of the plank had been worn away by the decaying process; there was a place where it would be possible for a man to strike his toe and fall, or strike his toe and stumble." The plank alongside of it projected up from three-fourths of an inch to an inch. The plank was apparently quite decayed. "It looks as if you might take your heel and smash it through if you jumped on it pretty hard in that particular place." That he noticed that condition "there several months before, several places in the platform similar to that." That he noticed that condition the following morning and the night after plaintiff was hurt. That the decayed part was between six and eight feet north of where the blood indicated that plaintiff was hurt. On cross-examination, defendant elicited from him a repetition of the statement that the place he had spoken of was something like 6 or 7 feet north of where he saw the blood. Mr. Kavanaugh testified on behalf of defendant. He stated that the platform was built for him and that he was thorougly familiar with it; that he saw the platform in the summer of 1908 almost every day. Being asked to state what the condition of the platform was in July, 1908, particularly July 23, 1908, he said: "I considered the platform in fairly good condition."

155 App.—46.

"Q. What was the general condition of the platform, about the central part of it? A. There was one plank that was about fifty-three or fifty-four feet from the south end, where the two planks came together of course there was a crack, one of the planks had the sappy edge—it was yellow pine—and one of the planks had the sappy edge worn on account of the sap having rotted somewhat; I should say that condition was probably about five inches long and three-quarters of an inch wide, just the sappy edge of the yellow pine plank.

"Q. I don't understand that you mean to convey to the jury, that that made a hole? A. No, there was no hole there at all; I examined it particulary.

"Q. When? A. I was thoroughly familiar with the platform before, but I examined it the next day after this accident."

Defendant introduced in evidence the written statement of plaintiff already mentioned and testimony tending to prove that the statement had been written as he made it and had been read over to him and that he signed and swore to it before a notary. Alice Sauerhage, the young lady who was with plaintiff when he was hurt, also testified for defendant. Being asked how the accident happened she said she saw somebody standing behind them catch the coach and ride past and shortly afterwards plaintiff fell between the platform and the train. That she could not say for sure who it was that caught the coach; that she saw plaintiff in the hospital three weeks after the accident and he told her that "he thought his fall was because of somebody bumping against him, and he fell under the train." On cross-examination, she said that she noticed the condition of the platform near where plaintiff fell "before the accident and after;" that "there was a few bad planks in the platform, there was one bad plank back of where he fell a short distance," a rotten place, but not a hole. The edge of the plank next to it stuck up about a quarter an inch. In rebuttal, plaintiff testifying, denied

having the conversation with Miss Sauerhage at the hospital. At the close of all the evidence, the defendant made a motion that the plaintiff be required to elect upon which of the first two counts of the petition he would stand, which motion the court overruled and defendant duly excepted. The court then instructed the jury that plaintiff was not entitled to recover upon the third count. It then gave the following instruction at the instance of the plaintiff:

"No. 1. The court instructs the jury that if they find from the evidence that on or about the 23d day of July, 1908, the defendant operated a railroad extending from the City of St. Louis to Cape Girardeau, Missouri; that at Selma, Missouri, the defendant maintained a platform for the purpose of taking on and discharging passengers from its trains; that at said time the defendant had negligently allowed the planks in said platform to become rotten and decayed, and that by reason of said rotten condition of the said planks they had become worn and broken, thereby causing the surface of said platform to become rough and uneven and also causing a hole therein; that on or about said date the plaintiff was a passenger on one of defendant's passenger trains; that said train stopped at said Selma for the purpose of allowing plaintiff to alight therefrom; that plaintiff alighted from said train and got upon and started to walk along the said platform while endeavoring to leave the premises of said railroad, and to proceed to his place of destination; that while walking along the said platform the aforesaid rough and uneven condition of the surface of said platform and the hole therein, (if you find from the evidence that such was the condition of said platform), caused plaintiff to stumble on said platform and to fall from the said platform and under the moving train of the defendant, thereby causing the plaintiff to be injured, then your verdict should be for the plaintiff, if you find from the evidence that at the time of the injury plaintiff was

himself in the exercise of ordinary care to avoid being injured."

It also gave an instruction at the instance of plaintiff evidently intended to respond to the second count which was the same as the first instruction except that it contained matter relating to the lighting of the platform which we need not here set forth. It also gave two instructions at the instance of plaintiff as follows:

"No. 3. The court instructs the jury that if they find from the evidence that defendant maintained a platform at Selma for the purpose of taking on and discharging passengers from its trains, that in that event it was the duty of the defendant to maintain its said platform in a reasonably safe condition for the use of those approaching or leaving its trains as passengers. And if you further find from the evidence that plaintiff was a passenger on defendant's train, and that he left said train at Selma, then in that event plaintiff had a right when he left said train, to get upon and pass along the said platform in the exercise of ordinary care, in leaving defendant's premises; provided you do further find that such platform was a part of the defendant's premises, along which the plaintiff might, in the exercise of ordinary care, pass in order to travel from said train to his place of destination.

"No. 4. The court instructs the jury that by the words 'ordinary care' as used in these instructions, is meant such care as would be exercised by a person of ordinary prudence under like or similar circumstances as those in connection with which the words 'ordinary care' are used in these instructions."

The fifth and last instruction given at the instance of the plaintiff bore on the measure of damages. At defendant's instance the court instructed the jury as follows:

"No. 7. The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony, and if you believe from the

evidence that any witness has willfully sworn falsely as to any material fact in evidence, then you are at liberty to disregard the whole or any part of such witness' testimony.

"No. 8. The court instructs the jury that if you believe from the evidence that defendant exercised ordinary care in maintaining its said platform, by which is meant such care as an ordinary careful or prudent person would exercise under the same or similar circumstances, then your verdict must be for the defendant."

The court refused to give instructions offered by defendant as follows:

"D. The court instructs the jury that plaintiff is not entitled to recover upon the charge that defendant failed to sufficiently light its said platform.

"G. The court instructs the jury that if you find from the evidence that plaintiff alighted upon the ground in safety from defendant's train, and thereafter went upon the station platform in question and while standing on said platform was struck either by a portion of defendant's train, or by some person on said train, thereby causing plaintiff to fall and to be injured, then your verdict must be for defendant.

"H. The court instructs the jury that if you believe from the evidence plaintiff alighted in safety from defendant's train upon the ground, and that thereafter plaintiff went upon the platform in question, then after plaintiff had gotten upon said platform he ceased to be a passenger of defendant, and defendant only owed. him the duty of exercising ordinary care, as defined in these instructions, with respect to the condition of said platform, and if you believe from the evidence that defendant exercised such care with respect to the condition of said platform at the time in question, then your verdict must be for the defendant."

The jury brought in a verdict finding for the plaintiff on the first count of his petition and assessing his

damages at $7500, and finding in favor of the defendant on the second and third counts.

CAULFIELD, J. (after stating the facts).—I. The defendant first complains of the trial court's action in overruling its motion made at the close of all the evidence to require plaintiff to elect upon which of the first two counts of the petition he would stand.  The defendant concedes the rule to be, that a party has the right to state his cause of action in different consistent counts, and does not contend that these counts are inconsistent; but defendant asserts that no one count states a complete cause of action; that by alleging in each count that the negligence therein assigned "directly contributed to cause plaintiff's said injury" plaintiff concedes that such negligence was not alone the proximate cause of the injury and is trying to borrow from the other counts to make its cause of action complete. This was nothing but an attack upon these two counts for the alleged reason that neither of them stated a cause of action.  To permit such an attack by motion to compel election would be to make the motion perform the office of a demurrer.  We are not cited to any case where such a use of the motion has been sanctioned and have concluded that it cannot properly be so used.  The motion was properly overruled.

II.  Defendant's next contention is, that its objection to the introduction of any testimony under the first count of the petition should have been sustained because the first count did not state a cause of action.  In support of its theory that this count did not state a cause of action defendant asserts that "but one act of negligence is pleaded therein, which is not alleged to have been the proximate cause of paintiff's injury, but is merely alleged to have directly contributed thereto." We may concede the correctness of defendant's description of the first count and still not agree that it does

not state a cause of action. When the entire petition is read it is apparent that the plaintiff intended to charge that three negligent acts contributed in producing his injury, for all of which defendant is responsible. Under these circumstances an allegation as to each act that it "directly contributed" to cause the injury does not render the petition defective. [Deschner v. St. Louis & M. R. Ry. Co., 200 Mo. 310, 98 S. W. 737; Parker v. United Rwys. Co. of St. Louis, 133 S. W. 137, 140.] It is true that the three acts were stated in different counts as if they were different causes of action, but as a matter of fact, plaintiff had but one cause of action, viz., his injury caused by defendant's negligence. That negligence might have consisted of one or several negligent acts, and in stating his case plaintiff was not confined to one of them, but was privileged to plead several, if not inconsistent with each other. Pointing to but one *injuria* for which reparation was asked, they might all have been stated in one count. [Thompson v. Livery Co., 214 Mo. 487, 491, 113 S. W. 1128; Senn v. Southern Ry. Co., 135 Mo. 512, 519, 36 S. W. 367.] Defendant concedes this, but urges that "each count of the petition must be sufficient in itself to support a verdict upon said count" and would have us ignore the fact, made plain by reading the petition as a whole, that plaintiff intends to charge that the negligent act specified in the first "count" "directly contributed," with other negligent acts of the defendant, to cause the injury upon which the suit was brought. We cannot better show the inapplicability of that rule to the case at bar than by quoting from a carefully considered opinion recently written by Judge Nortoni and delivered by this court. We refer to the case of Richard Brown & Son C. Co. v. Bambrick Bros. Const. Co., 150 Mo. App. 505, 131 S. W. 134, 135, where it was said: "It is true enough the separate counts of a petition must be complete in themselves where they proceed upon separate and distinct causes of action as they properly should in

every case. But this rule does not obtain when there is only one cause of action set forth in the petition which might properly be pleaded in one count and has been mistakenly set forth separately. In such circumstances, after judgment, the entire pleading should be construed in aid of the verdict as setting up a single cause of action irrespective of the intended division." We are convinced that reading the petition as a whole it is not to be construed as failing to charge that defendant's breach of duty was the proximate cause of plaintiff's injury, or as justifying an implication that plaintiff was guilty of contributory negligence. The trial court's action in overruling defendant's objection to the introduction of any evidence was correct and is approved.

III. Defendant's next "position is, that under all the facts and circumstances in evidence, the court was not justified in submitting to the jury the question of a negligent condition of the platform." We have examined the record carefully and are convinced that the evidence was sufficient to justify submitting that question to the jury under proper instructions.

IV. Defendant next contends that the court erred in giving plaintiff's first instruction because said instructon failed to require the jury to find that defendant knew or by the exercise of ordinary care could have known of the alleged defective condition of said platform, a sufficient time to afford it a reasonable opportunity to repair it. We find that none of the instructions treat of defendant's knowledge or constructive. notice of the defect at all. This was error. In an action, such as this, for injuries resulting after the relation of carrier and passenger has ended, the defendant is held only for lack of ordinary care in respect of platforms and approaches. [Fillingham v. St. Louis Transit Co., 102 Mo. App. 573, 582, 77 S. W. 314; 4 Eliott on

Railroads, sec. 1590; Joyce v. Railroad, 219 Mo. 344, 373, 118 S. W. 21.] And where, as here, it does not appear that the defect was caused by the defendant or its servants, the plaintiff must prove that the defendant or its servants knew or by the exercise of ordinary care could have known of the defect in time to have reasonable opportunity to repair it. That was the very pith of plaintiff's case and was a fact in issue which should have been submitted to the jury by plaintiff's instructions. [Zellars v. Missouri Water & Light Co., 92 Mo. App. 107, 122.] Nor do we find anything in defendant's instructions supplying the omission. But plaintiff asserts that where facts are presumed as a matter of law it is not necessary to submit them to the jury and cites Hitt v. Kansas City, 110 Mo. App. 713, 716, 85 S. W. 669, where the court said, "Where the defect has existed for a long time the law presumes knowledge upon the part of the city and that it had such a reasonable time within which to remedy such defect." But in its statement of facts the court said, "It is not denied that whatever its condition may have been the defendant had *notice* of it." So that the question of knowledge was not involved in that case at all. If that case is to be taken as holding that mere existence of a defect for a long time without regard to its obviousness or location raises a presumption of knowledge of it, we are not prepared to agree with it. The question is, whether the defendant failed to exercise ordinary care, and is to be determined by the jury unless but one view could be entertained concerning it. What is ordinary care necessarily depends upon the facts and circumstances of each case. A failure for a very short time to discover and repair a yawning chasm in the floor of a crowded railroad depot would be gross negligence, while it may be seriously doubted whether a failure to discover and repair a very slight decayed spot in the comparatively new platform of a flag station, used mostly for freight, is negligence at all. The latter must at least be suf-

ficiently obvious that it is discoverable by such an inspection as would respond to the duty of exercising ordinary care, and the railroad company is not required to make such inspection oftener than the exercise of ordinary care would require—what is ordinary care depending, as we have said, upon the facts and circumstances of the particular case. This distinction is illustrated to some extent by the cases of Fullerton v. Fordyce, 144 Mo. 519, 44 S. W. 1053, and James v. Railroad, 107 Mo. 480, 18 S. W. 31. In the first case, a hole six feet long and eight inches wide had been made in a depot platform by the defendant's servants and the court held that to leave it unrepaired for four days was negligence as a matter of law. The court distinguished the facts before it from the facts of the James case where the hole was made with an auger and was from one and one-half to two inches in diameter, and the court said that it could not assume "that it is negligence to permit a hole to remain in a railroad station platform." Plaintiff calls our attention to the fact that in the Zellers case the court, upon rehearing, repeated the rule, "that it is not reversible error to assume that as a fact which was conceded at the trial, or which was established by uncontradicted and uncontroverted evidence," and applying it to the facts of the case before it held it not to be error to omit from an instruction the question of defendant's knowledge of the defect said to have caused the injury. But, as a foundation for that holding, the court said: "The entire evidence, including that for defendant, shows that *defendant's servants* to whom it had delegated the duty to keep the place safe knew of the defect and of its being unsafe." In the case at bar there is no pretense of such knowledge on the part of defendant's servants. The plaintiff must recover, if at all, upon the theory that the facts and circumstances, including the nature and location of the defect and length of time it existed, were such as to indicate that the defendant failed to exercise ordinary care in fail-

ing to discover and repair it before plaintiff was injured. We do not agree that in this case the facts and circumstances were so clear, uncontroverted and conclusive that the defendant was not entitled to have the finding of the jury upon them. The defendant's answer put in issue all those allegations of the petition as to which plaintiff had the burden of proof. When a party having the burden of proof offers testimony, the other party is entitled to have the jury determine the credibility of such testimony, even though offering nothing to contradict it. [Gannon v. Laclede Gas Light Co., 145 Mo. 502, 517, 47 S. W. 907.] Of course the other party may either expressly or impliedly concede a fact by its pleading or by offering testimony in proof of the fact, or by conduct at the trial explainable only on the theory that it concedes the fact. But the fact is not to be taken as conceded merely because of a failure to offer contrary testimony. Now the testimony before us tends to prove that witnesses had noticed some defect in the platform before plaintiff was hurt, but the time that they say they noticed it is not at all uniform. Plaintiff admitted going to the platform quite frequently without noticing its exact condition at all. Miss Sauerhage said that she had noticed a bad place "before the accident." Kavanaugh said merely that he was familiar with the "platform;" Sam Henderson that he had noticed it off and on "always as we came through;" George O'Neill, that he had first noticed the hole for four or five days beforehand; Mr. Knight, that several months before he had noticed a defective place; Wierschem, that he hauled milk over the platform and noticed it "all the time." Even if the credibility of all these witnesses be taken to have been established and not attacked and it be accepted that they had all noticed the defective place at approximately the same time before plaintiff was hurt, which is not a fact, still they were not the servants of defendant and the fact that they noticed the defect beforehand was merely evidence tending to prove that if

defendant had exercised ordinary care it would have discovered the defect in time, etc. Their noticing it was merely a fact to be considered by the jury with all the other facts and circumstances shown in evidence. It was not at all conclusive. Among those other facts and circumstances may be included the facts, tended to be proven by the evidence that the defect was a comparatively slight one in an expanse of eight hundred square feet of platform; that the platform was comparatively new, of substantial planking, and primarily intended as a place to load milk cans on trains, being merely a flag station little used for passengers. For the error in this instruction the judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.