WILLIAM A. REYNOLDS, Respondent, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals.    Opinion Filed January 9, 1912.**

1. NEGLIGENCE: Use of Premises: Injury to Invitee. An owner or occupant of land who induces or leads others to come upon it for a lawful purpose is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice of it to them or to the public.

2. CARRIERS OF PASSENGERS: Termination of Relation. When a passenger on a railroad train safely alights from the train at his destination and leaves the carrier's premises in safety, the relation of carrier and passenger is terminated.

3. ————: ————: Care of Baggage. Where the relation of carrier and passenger is ended, and the passenger leaves his baggage in the carrier's care, the latter becomes a warehouseman or bailee, and is under an obligation to allow the bailor access to the depot where the baggage is stored, for the purpose of removing it, and to see that there are no defects in the station or platform controlled by it, which might cause injury to the bailor while he is doing so.

4. ————: Negligence: Injury on Passageway: Ownership. A passageway from a station of one railroad company to a station of another company was used interchangeably by the companies and by persons having business with them. A person, while taking his baggage from the depot of one of these companies, was injured by striking a truck on this passageway. The truck was the property of this company (the defendant), but there was no showing that it had been left on the passageway by one of defendant's employees, nor was there a showing that that part of the passageway where plaintiff struck the truck was owned, maintained or controlled by defendant. *Held,* that because plaintiff failed to show that defendant owned or controlled, alone or with the other company, that part of the passageway where the truck was left, he was not entitled to recover against it.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. R. G. Ranney,* Judge.

REVERSED.

*S. H. West, Roy F. Britton* and *Wammack & Welborn* for appellant.

(1) Negligence consists in the violation of some duty having regard to the relation between the parties, to time, place and circumstances. Henry v. Railroad, 76 Mo. 288; Richmond v. Railroad, 133 Mo. App. 463; Dowd v. Railroad, 20 L. R. A. (Wis.) 532; Carr v. Railroad, 195 Mo. 214. (2) Appellant owed no duty to the plaintiff. Stroub v. Soderer, 53 Mo. 42; Wencker v. Railroad, 169 Mo. 592; Heinlein v. Railroad, 147 Mass. 136; Severy v. Nickerson, 120 Mass. 306; Faris v. Hoberg, 134 Ind. 269; Parker v. Pub. Co., 69 Me. 173; O'Bryan v. Steel Co., 100 Mo. 182; Railroad v. Laloge, 113 Ky. 896, 62 L. R. A. 405; Railroad v. Griggs (Tex.), 106 S. W. 411. (3) The duty of a railroad company to light its premises is complied with if it keeps them lighted for a reasonable time before and until after the departure of its night passenger trains. Waller v. Railroad, 59 Mo. App. 429; Sargent v. Railroad, 114 Mo. 348; Railroad v. Griggs, 106 S. W. 411; Railroad v. Laloge, 62 L. R. A. 405; R. S. 1899, Sec. 1075; Thompson on Negligence, sec. 2691; White's Sup. to Thompson on Negligence, 2695. (4) Under the evidence in this case, no liability attaches to the appellant from the mere fact that these trucks were at the place where they were when plaintiff fell over them. Waller v. Railroad, 59 Mo. App. 410; Hesselbach v. St. Louis, 179 Mo. 505; Walthers v. Railroad, 78 Mo. 617; Binicker v. Railroad, 83 Mo. 660.

*M. A. Dempsey* and *T. D. Hines* for respondent.

(1) One who goes upon the premises of a railway company to transact business with it or its agents, or to transact business in the operation of the road, or who is there by invitation of the company, express or implied, is lawfully there, and the railroad company owes him a duty of exercising ordinary care in

the construction and maintenance of its depots and platforms, to avoid injuring him. Bennett v. Railroad, 102 U. S. 577; 1 Fetter, Carriers of Passengers, secs. 46, 236, 239. The following cases illustrate the foregoing proposition as to the persons included within its protection: Lowenstein v. Railroad, 119 S. W. 430; Lowenstein v. Railroad, 117 Mo. App. 371; Spotts v. Railroad, 111 Mo. 380; Winscott v. Railroad, 131 S. W. 749; Evans v. Railroad, 130 Mo. App. 509; Henry v. Disbrow, 128 S. W. 841; Schaaf v. Box Co., 131 S. W. 939; Moore v. Railroad, 84 Mo. 481; Strafford v. Railroad, 22 Mo. App. 333; Hole v. Railroad, 60 Vt. 605; Bradford v. Railroad, 59 Me. 183; Holmes v. Railroad, L. R. 4 Exch. 254; Shelby v. Railroad, 85 Ky. 224; Coggswell v. Railroad, 20 L. R. A. (N. S.) 837; Railroad v. Jandera, 24 L. R. A. (N. S.) 535. And the following cases are authority as to the places and objects requiring the exercise of such care: 1 Fetter, sec. 52; Lucas v. Railroad, 120 Ind. 205; Railroad v. Lucas, 110 Ind. 583; Clussman v. Railroad, 9 Hun, 73 N. Y. 606; Peniston v. Railroad, 34 La. Ann. 777; Railroad v. Evans, 52 Neb. 50; Collins v. Railroad, 80 Mich. 390; Skottowe v. Oregon, 22 Ore. 430; Railroad v. Watson, 94 Ala. 634; Exton v. Railroad, 63 N. J. L. 356; Winkler v. Railroad, 21 Mo. App. 99; Bethmann v. Railroad, 152 Mass. 352. (2) The railway company is liable for negligent handling of appliances by persons not in its employ, but who are permitted to use such appliances. White, Personal Injuries, sec. 629; Mangan v. Railroad (N. C.), 58 N. E. 913, 13 L. R. A. (N. S.) 589. And for negligence of mail clerks throwing mail bags on the platform. Sargent v. Railroad, 116 Mo. 348; Railroad v. Sims, 43 Ill. App. 260; Carpenter v. Railroad, 97 N. Y. 494; Snow v. Railroad, 136 Mass. 552.

REYNOLDS, P. J.—This action was originally brought by plaintiff, respondent here, against the St.

Louis & San Francisco Railroad Company, hereafter referred to as the Frisco. Afterwards by amendment the St. Louis Southwestern Railway Company, hereafter called the Cotton Belt, was made a party defendant along with the Frisco. The amended petition avers that defendants are engaged in operating their lines of railroad through the village of Delta, at which point these railroads cross the St. Louis, Iron Mountain & Southern, hereafter referred to as the Iron Mountain. It is further averred that at this station of Delta "each defendant at all the times herein mentioned, maintained a depot with platform and passages in connection therewith communicating from one depot to the other for the use and convenience of passengers and others having lawful business to transact there with either or both of defendants." It is also averred in the petition that the general direction of the main track of each defendant is from the northeast to the southwest paralleling each other, the tracks of the Cotton Belt lying about 200 feet east of those of the Frisco, the petition avers, but it appears by the plat in evidence and the testimony that in point of fact the tracks of the Cotton Belt are 245 feet almost directly south of those of the Frisco, the tracks of the Iron Mountain intersecting both of said tracks at right angles. It also appears in evidence that the station or depot of the Frisco is alongside of and south of its tracks, separated from the tracks by a platform or passageway apparently between seventeen and twenty feet wide. The Iron Mountain and the Cotton Belt occupy the same station, which is situate in the angle formed by the crossing of those two roads, and is a little over 200 feet south of the Frisco station. The part of the station used by the Cotton Belt lies alongside of its tracks and to the north of them and between the tracks and station is the platform; that part used by the Iron Mountain lies alongside of its tracks and to the east of them, being between the station and the

tracks. Commencing south of and in front of the Cotton Belt end of the station this platform or passageway runs west in front of and the length of the Cotton Belt's part of the depot and between it and the Cotton Belt tracks to where the tracks of the Iron Mountain cross the Cotton Belt and then turns north at a right angle and runs north and along the east side of and beyond the Iron Mountain depot to where the Frisco crosses the Iron Mountain and then takes off at a right angle and runs east between the Frisco depot and its tracks. The passageway is continuous from in front of the Cotton Belt along the Iron Mountain and the Frisco. It is built on the top of the dumps or fills which are from three to five feet high and which constitute the roadbeds upon which the tracks of these several roads are constructed through this locality, the roads there running through low, swampy ground. The top or surface of these dumps so used as a passageway, is composed of chert, or, as called by the witnesses, "chat," rendering the whole surface hard and fairly smooth. There is no division line between the several parts, but a witness testified that they were distinguishable, as that part constructed by the Frisco was white, while that constructed by the Iron Mountain was blue or darkish.

The amended petition, after describing these platforms, but not as particularly as we have done, proceeds to aver "that the said platform or passageway at their said depots (referring to the Frisco and Cotton Belt), and between their said depots is and was at all times herein mentioned, under the mutual reciprocal control and management of defendants, and is and was used by passengers arriving and departing, and arranging for arriving and departing, and by persons having other business to transact with said defendants there, and that all these conditions existed on and prior to the 18th day of February, A. D. 1909." It is further averred in the petition that on the above

mentioned date, plaintiff arrived at this station of Delta by the Cotton Belt as a passenger on a train of that road (at about 4 o'clock in the afternoon according to the evidence), and that having left his baggage temporarily at the Cotton Belt depot he proceeded along the passageway mentioned to the depot of the Frisco and thence across the tracks of that road to a hotel there situated for the purpose of securing hotel accommodations, plaintiff intending to depart by a train of the Frisco scheduled to leave Delta early the following morning; that in passing along the passageway he found no obstacles or obstructions in his way; that by the time he had secured his hotel accommodations and eaten his supper it had grown dark and he attempted to return along the platform or passageway "of defendants" to the depot of the Cotton Belt for the purpose of getting his baggage which he had checked there and placing the same in the depot of the Frisco and there checking it in readiness for his departure on the following morning; that the passageway was unlighted, the night very dark and he was unable to distinguish objects, but knowing of no danger and while proceeding along the passageway he suddenly and unexpectedly struck with force and violence against an obstruction standing on this passage way, so used by passengers and the public and there fell, having struck his legs between the knees and ankles on a sharp object which he afterwards found was the end of a hand-truck used by the servants of defendants in handling baggage; that he was injured thereby and shocked by the unexpected fall and suffered great pain, but was able to go to the hotel and the next morning took the train of the Frisco railroad; that on the day following his leg became much worse, blood poisoning developed and he suffered great pain and expended the sum of $400 for medical treatment and nursing. Averring that it was the duty of defendants and each of them to keep the platform

reasonably safe for the accommodation of passengers and of others having lawful business with them at said point, and to keep this passageway between their depots as well as their depots lighted at the hour and place where plaintiff fell and was injured, and to keep this passageway free from obstructions, obstacles and trucks in order to secure the safety of passengers alighting from their trains or in going to their depots on business as was this plaintiff at the time he received the injury, and that on this day upon which plaintiff received his injury, they had wholly disregarded their duties in this respect, in that defendants had failed and neglected to light the platform or passageway or furnish light therefor and had negligently placed and suffered to be placed and remain upon the platform an obstruction, namely, the truck aforesaid over which persons using the platform were likely to fall and injure themselves as did plaintiff, plaintiff avers that he was damaged in the sum of $10,000, for which he prays judgment.

In giving a synopsis of the petition in the case we have, for the sake of brevity and to avoid repetition, incorporated in it in describing the locality, some of the facts that are proven by the uncontroverted evidence in the case.

The trial was before the court and a jury. At the conclusion of plaintiff's case each defendant interposed demurrers which being overruled and exception saved, defendants introduced their evidence and plaintiff introducing evidence in rebuttal defendants again interposed demurrers. That of the Frisco was sustained but that of the Cotton Belt was overruled and after being instructed by the court, the jury returned a verdict in favor of the Frisco but found against the Cotton Belt and assessed plaintiff's damages at the sum of $800. Judgment followed accordingly and after interposing a motion for new trial and saving exceptions to that being overruled, the St.

Louis Southwestern Railway Company duly perfected its appeal to this court.

It may be said of the case that plaintiff proved all the facts averred in his petition, as also the facts which we have set out and which were not specifically pleaded, with one very marked exception. That exception covers the allegation to the effect that this defendant was one of those who owned and maintained the passageway upon which the accident occurred, and that this passageway upon which the accident occurred and at the point on it at which the accident occurred, was under the control and management of this defendant, in conjunction with its codefendant. It is clear that without this fact appearing by the evidence in the case, plaintiff should not have recovered as against this defendant.

The duty of railroads or, for that matter, of others owning premises to which the public generally or the customers or patrons or persons visiting the premises have been invited or permitted, has been treated of at great length by accepted text-writers as well as by the courts. In addition to the text-writers cited by the learned counsel for the respective parties, reference may be made to 3 Elliott on Railroads (2 Ed.), chap. 52; 4 Ibid., chapters 59 and 67. The law on the matter is well epitomized by Mr. Justice Harlan, speaking for the Supreme Court of the United States, in Bennett v. L. & N. Ry. Co., 102 U. S. 577. The syllabus to that case, said to have been written by the learned justice, is that "the owner or occupant of land who induces or leads others to come upon it for a lawful purpose, is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice thereof to them or the public." In the body of the opin-

ion (l. c. 585) it is said that it was the plain duty of the owner or person in control of the passageway upon which the accident happened from which the injury was suffered "to take such precautions, from time to time, as ordinary care and prudence would suggest to be necessary for the safety of those who had occasion to use the premises for the purposes for which they had been appropriated by the company, and for which, with its knowledge and permission, it was commonly used by the public." This latter applies as well to defects as to obstructions.

The duty railroad companies of this state owe to passengers, with respect to the safety of a place of landing, is so clearly set out by Judge Goode, speaking for this court, in Fillingham v. St. Louis Transit Co., 102 Mo. App. 573, 77 S. W. 314, his opinion quoted from with approval by our Supreme Court in Rearden, Admr. v. St. Louis & S. F. R. Co., 215 Mo. 105, 114 S. W. 961, and the duty of railroads to see to the safe condition of their platforms, even as to those persons who used them but who have completed their journey and could no longer be said to be passengers, is so fully discussed by Judge Caulfield, speaking for this court, in Munro v. St. Louis & San Francisco Railroad Co., 155 Mo. App. 710, 135 S. W. 1016, that it is unnecessary for us to discuss it here. Nor is it necessary in this case to go into the law governing the relation of carrier and passenger, for in the case at bar when this plaintiff had arrived at Delta station, carried there as a passenger by the Cotton Belt, appellant here, and was safely landed from its train and had left the platform of that road in safety, the relation of carrier and passenger no longer existed between him and the railroad. Plaintiff had left his baggage, or part of it, in the depot of the appellant, checking it there, but while the check issued was that of the railroad, the relation of the railroad to the baggage and to the plaintiff then became that of ware-

houseman or bailee, and up to the time it was taken
or attempted to be taken away, defendant was a bailee.
Accepting it for safe-keeping the obligation and duty
was on the defendant railway to allow plaintiff access
to that depot for the purpose of removing his baggage.
It was under the further obligation to see that no pit-
falls were in that station or in the platform owned
or controlled by defendant and that no obstructions
were suffered on it that would cause damage to plain-
tiff. Beyond that it owed him no duty. Whether
plaintiff was an invitee or licensee is here immaterial,
for the inviter or licensor must have been owner or
in control of the premises at or on which the injury
was received. It is to be noted that by the text-writ-
ers as well as by the courts, the duty is invariably
referred to as a duty imposed upon the owner or party
in control. Herein the plaintiff has fallen down. The
testimony is overwhelming and uncontradicted that
while this passageway from the hotel and from the
Frisco station to the Iron Mountain and Cotton Belt
station was a passageway used interchangeably by
these railroads themselves and by persons having
business with them, that testimony is equally conclu-
sive that the passageway along the west side of the
station and between the station and the Iron Moun-
tain railroad tracks and up to the Frisco tracks was
neither owned by nor under the control of the Cot-
ton Belt. The truck over which plaintiff fell, accord-
ing to the testimony, was owned by the Cotton Belt.
Its exact situation is not very clear but the evidence
is clear and positive that it was not more than eleven
or twenty feet south of where the track of the Frisco
crossed that of the Iron Mountain. Whether it was
on that part of the platform owned by the Frisco or
by the Iron Mountain is not clear. It was in evi-
dence and not contradicted, that the Cotton Belt keeps
up the part of the passageway which lies in front of
and to the south of its station and that of the Iron

Mountain, to the crossing of the Iron Mountain and Cotton Belt; that the Frisco keeps up the passageway to or near a post which a witness identified by a plat but which is not so identified in the abstract that we can locate it definitely, but apparently about 20 feet south of the Frisco tracks; that the Iron Mountain maintains and keeps up the dump and passageway along the east side of its tracks from near where the Cotton Belt crosses it up to the Frisco tracks, a distance of about 245 feet; that all of the passageway and dump in front of the Cotton Belt and Iron Mountain was originally built by the Iron Mountain and Cotton Belt, but later turned over to the Iron Mountain and kept up by it up to and at the time of the accident. There is no contradiction of this testimony and it is positive. It is further in evidence that so far as the Cotton Belt is concerned it was a mere licensee of the roadway for its tracks, crossing and occupying the ground of the Iron Mountain at the intersection of the two roads by the permission of the latter, but in control of only that part of the passageway in front of its depot. It is very clear and beyond dispute that the truck at the time of the accident was not on that part of the passageway owned or controlled by the Cotton Belt.

A witness testified that he was the porter for the three railroads, "hired by the men who are employed in the offices there to do the porter work. I am not employed as porter for the railroad. I am hired by them for transferring freight. Baggage is transferred independently to the travelling public. They pay for it. The company does not hire me to do that. I am not required by the company, or either of the companies, to move baggage." But he further testified that he had "a kind of contract with the Frisco to transfer their freight to the Iron Mountain and Cotton Belt. The crews of the Iron Mountain and Cotton Belt themselves transfer their freight to the Fris-

co. I have nothing to do with the freight or baggage from the Iron Mountain and Cotton Belt to the Frisco, unless I am employed by the individual. I do transfer freight from the Frisco over to that depot to both the other roads." Another witness testified that he was a sort of helper to this witness, who had often told him to see that the trucks were not left on the passageway. It is clear that neither of these men was in the employ of the Cotton Belt; whatever employment there was by any of the three roads was by the Frisco; neither the Cotton Belt nor the Iron Mountain appear to have had any control over them. Moreover, it may be said that there is no evidence even tending to show that either of these two witnesses were responsible for the truck being in the position it was at the time of the accident. While one of them testified that the truck which caused the accident was owned by the Cotton Belt, there is no pretense of any testimony that any one connected with the Cotton Belt had left it at this particular place, and there is testimony that while all three of these companies own trucks and that they use them indiscriminately, and that the general public uses them, there is no testimony that the truck over which plaintiff fell was in the use of the Cotton Belt or of any person having any business with the Cotton Belt when it was left in this dangerous position. The mere fact of ownership of a truck has nothing to do with the liability of the defendant in this case. The truck in itself was not dangerous. It only became a menace to wayfarers when left where they might stumble over it. Its menace to the public consisted in its position, in the place at which it was left. If left at a place owned or controlled by defendant, either singly or conjointly with the other roads, then each of them is responsible. Here lies the failure of plaintiff. He has not proved, has offered no evidence even tending to prove, that the Cotton Belt owned or controlled, alone or with the

Frisco, the place at which this truck was left, beyond the fact that the passageway was continuous. While it is true that passengers to and from the Cotton Belt station and persons going to that station either by license or invitation, if going either from the Frisco depot or from the hotel, naturally, almost necessarily, would have to go over this passageway, it cannot be held that that made the passageway a part of the platform of the Cotton Belt or made the Cotton Belt responsible for accidents happening by reason of defects in it or obstructions to it unless the Cotton Belt itself owned or controlled jointly with the other roads, the whole of it, and particularly that part of the passageway at which the accident occurred. So far as the Cotton Belt is concerned, this passageway at that point was as if a public street leading to its depot. The Cotton Belt, according to the evidence, had charge of only the part of the platform in front of its own part of the station, and is chargeable for defects or obstructions on that part, although it did not own it. The Iron Mountain owned and had charge of the passageway about 225 feet long, east of its tracks and north of its intersection with the Cotton Belt. The fact that the platform even connected, or that it was a continuous one, does not settle its ownership or control nor fix liability for accident on it. It would hardly be argued by any one that because people went over this passageway to reach the depot of the Cotton Belt, that from this fact the Cotton Belt became responsible for the safety of passage over it unless it belonged to it or was in charge of or in some manner under its control, whether jointly or of itself is immaterial, any more than it could be successfully argued that because the Union Station at St. Louis fronting on Market street can only be entered by people going east or west on Market street, injured while walking along this pavement by an obstruction or defect in the sidewalk, could hold the Terminal Associa-

tion, assuming it to be the owner of the Union Station, for injuries received from the obstruction left on the sidewalk, unless it was shown that the Terminal Association either owned the sidewalk or had placed the obstruction which caused the accident in the way of travelers. The fact that the pavement led to the station would not make the owner of that station liable for injuries to persons passing over it on their way to the station. Hence we hold that the Cotton Belt was in no manner responsible for this part of the passageway running along the east side of the Iron Mountain tracks and south of the Frisco track, and it was on this part of the platform that the accident occurred.

The demurrers asked by this defendant at the end of plaintiff's case and at the end of the whole case should have been given. The judgment of the circuit court against the St. Louis Southwestern Railway Company, appellant here, is reversed. *Nortoni* and *Caulfield, JJ.*, concur.